(January 20, 1899.)

## STATE v. WEBB.

### [55 Pac. 892.]

INDICTMENT.—Objections to indictment considered and overruled.

ROBBERY—CROSS-EXAMINATION.—In the trial of a criminal action, as in this case a charge of robbery, the defendant should be permitted, upon cross-examination of prosecuting witness, to interrogate such witness as to any matters connected with the transaction.

EVIDENCE.—Where it appeared from the evidence that the defendant, the prosecuting witness, and others, had been together drinking from 10 o'clock in the evening until 5 o'clock in the morning, when the robbery was alleged to have taken place, the prosecution upon

the trial having confined their examination of the prosecuting wit-
ness to the first meeting of said witness, and the defendant, and
to the occurrences at the time of the alleged robbery, leaving an
interim of some seven hours, during which it seems the parties
were continually together, unexplained. It was error to refuse to
permit the defense to interrogate the prosecuting witness, as to
his acts and whereabouts during such interim.

INSTRUCTIONS.—Where instructions are conflicting and irreconcilable
they are erroneous.

ALIBI—BURDEN OF ESTABLISHING.—Where a defendant relies upon
the defense of an *alibi*, the burden of establishing such defense is
upon the defendant, and if the defendant succeeds, by competent
evidence, in establishing a reasonable doubt in the minds of the
jury as to his presence at the time and place when and where the
offense was committed, when the committing of the offense by him
made his presence imperative, he is entitled to an acquittal. The
character and extent of the evidence requisite to create such
doubt is matter for the jury.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

James E. Fulton and Wallace N. Morphy, for Appellant.

The court erred in overruling the demurrer of the defendant
to the indictment. The indictment in this cause is insuffici-
ent and defective in the following particulars: (a) It is in-
definite and uncertain as to the time of the alleged robbery, in
that it alleges it to have been "on or about the twenty-sixth
day of October, A. D. 1897." The averment as to the time of
the commission of an offense must be of a date certain prior to
the filing of the indictment. (*Commonwealth v. Adams,* 4 Gray
(Mass.), 27; *Commonwealth v. Keefe,* 9 Gray (Mass.), 290;
*State v. Temple,* 38 Vt. 37; *State v. Jackson,* 39 Me. 291; *Jane
v. State,* 3 Mo. 61; *State v. Hayes,* 24 Mo. 358; *People v. Wal-
lace,* 9 Cal. 31; *Morgan v. State,* 13 Fla. 671; 1 Green Cr.
Rep. 361.) (b) The indictment should, but does not, allege
an intent or purpose to rob or steal from the person of the
said Fred Gagnon. Intent or purpose to steal is essential, and
a necessary element to constitute the crime of robbery, and
cannot be inferred as a legal presumption. This intent must
be specifically and directly averred as a part of the description
of the offense. (*Holt v. Territory,* 4 Okla. 76, 43 Pac. 1083;
*Chappell v. State,* 52 Ala. 359; *State v. Dolan,* 17 Wash. 499,

50 Pac. 472; *Blanton v. State,* 1 Wash. 265, 24 Pac. 433;
Maxwell's Criminal Practice, 176-185; *Leonard v. Territory,* 2
Wash. Ter. 381, 7 Pac. 872; *State v. So Ho Ge,* 1 Wash. 275,.
276, 24 Pac. 442, 443; *State v. McCormick,* 27 Iowa, 402;.
*Fouts v. State,* 4 G. Greene (Iowa), 500; *Wright v. Territory,* 5·
Okla. 78, 47 Pac. 1069; *Fouts v. State,* 8 Ohio St. 98; *Kain v.*.
*State,* 8 Ohio St. 307; *Hagan v. State,* 10 Ohio St. 459; *Sny-*·
*der v. State,* 59 Ind. 105; *Shaffer v. State,* 22 Neb. 557, 3 Am..
St. Rep. 274, 35 N. W. 384; *State v. Brown,* 21 Kan. 38;.
*State v. Patrick,* 3 Wis. 709; *Morris v. State,* 13 Tex. App. 65;.
*State v. Hollyway,* 41 Iowa, 200, 20 Am. Rep. 586.) Under·
the American rule, it is held that a cross-examination is not.
limited to the very day and to the exact facts named in the
direct examination, but may extend to other matters which
limit, qualify or explain the facts stated in the direct examina-·
tion or modifies the inference deducible therefrom, providing·
only that such matters are directly connected with the facts.
testified to in chief. (*Blake v. Powell,* 26 Kan. 320; *Haynes*·
*v. Ledyard,* 33 Mich. 319; *Wilson v. Wager,* 26 Mich. 452;.
*Thomas v. Miller,* 151 Pa. St. 482, 25 Atl. 127; *Mayer v.*·
*People,* 80 N. Y. 364; *People v. Dixon,* 94 Cal. 255, 29 Pac..
504; *Black v. Wabash R. R. Co.,* 111 Ill. 351, 53 Am. Rep..
628; *Carey v. Richmond,* 92 Ind. 259.) Where a witness in·
his direct testimony gives only a portion of a material trans-·
action or conversation, it is the right of the party against .
whom he testifies to cross-examine him in detail concerning·
the omitted portion: (*State v. Adams,* 108 Mo. 208, 18 S. W.
1000; *Murray v. Great Western Ins. Co.,* 72 Hun, 282, 25 N.
Y. Supp. 414; *Ah Doon v. Smith,* 25 Or. 89, 34·Pac. 1093;.
*Sayres v. Allen,* 25 Or. 211, 35 Pac. 254; *Currier v. Robinson,*.
61 Vt. 196, 18 Atl. 147; *Weadock v. Kennedy,* 80 Wis. 449, 50
N. W. 393; *People v. Strong,* 30 Cal. 151; *People v. Small-*
*man,* 55 Cal. 185; *Shackelford v. State,* 43 Tex. 138; *Addison*
*v. State,* 48 Ala. 478; *Home Benefit Assn. v. Sargent,* 142 U.
S. 691, 12 Sup. Ct. Rep. 332; *Eames v. Kaiser,* 142 U. S. 488,
12 Sup. Ct. Rep. 302; *Gilmer v. Higley,* 110 U. S. 47, 3 Sup.
Ct. Rep. 471.) An instruction which authorizes the jury to
consider matters foreign to the issue made by the indictment is
erroneous. It has also been held that where the evidence

makes out a case in favor of the plaintiff, but upon a different theory from that set up in the complaint, it will be error to give an instruction in conformity with the case made by the evidence. (*Johnson v. Fraser,* 2 Idaho, 404, 18 Pac. 48; *Territory v. Evans,* 2 Idaho, 425, 17 Pac. 139; *Terry v. Shicbly,* 64 Ind. 106; *Glass v. Gelvin,* 80 Mo. 297; *Capital Bank v. Armstrong,* 62 Mo. 59; *Moffat v. Conklin,* 35 Mo. 453; *Wade v. Hardy,* 75 Mo. 394; *Frederick v. Kinzer,* 17 Neb. 366, 22 N. W. 770; *Marx v. Schwartz,* 14 Or. 177, 12 Pac. 253; *Parker v. Marquis,* 64 Mo. 38.) It is a general rule of law that in criminal prosecutions the burden of proof never shifts, but as to all defenses which the evidence tends to establish, the burden rests upon the state throughout to establish defendant's guilt beyond a reasonable doubt. This rule of law applies as well to any distinct substantive defense which may be interposed by the accused to justify or excuse the act charged as to the case as made by the state. (*Gravely v. State,* 38 Neb. 871, 57 N. W. 751; 1 Greenleaf on Evidence, sec. 81, notes; 3 Greenleaf on Evidence, sec. 29, and note A; *People v. Riordon,* 117 N. Y. 71, 22 N. E. 455; *People v. Downs,* 123 N. Y. 558, 25 N. E. 988; *Tiffany v. Commonwealth,* 121 Pa. St. 165, 6 Am. St. Rep. 775, 15 Atl. 219; *Rudy v. Commonwealth,* 128 Pa. St. 500, 18 Atl. 344; *Commonwealth v. Mc-Kie,* 1 Gray, 61, 61 Am. Dec. 410; *People v. Coughlin,* 65 Mich. 704, 32 N. W. 905; *Lilienthal v. United States,* 97 U. S. 237; *Howard v. State,* 50 Ind. 190; 1 Bishop's Criminal Procedure, secs. 1048, 1051, 1066; 2 Bishop's Criminal Procedure, secs. 669, 673.) The evidence of an *alibi* is like any other evidence which tends to negative the guilt of the accused. Self-defense and insanity are regarded as affirmative defenses, but the rule of law is that if the evidence in the case raises in the mind of the jury a reasonable doubt as to whether or not the killing was done in self-defense, or as to whether the party was insane at the time, the accused should have the benefit of such doubt and be acquitted. (*Wright v. People,* 4 Neb. 407; *State v. Donahoe,* 78 Iowa, 486, 43 N. W. 297; *State v. Cross,* 68 Iowa, 180, 26 N. W. 62; *State v. Dillon,* 74 Iowa, 653, 38 N. W. 525; *Baker v. State,* 50 Neb. 202, 69 N. W. 749; *Ballard v. State,* 19 Neb. 609, 28 N. W. 271.)

Samuel H. Hays, Attorney General, for the State.

As to the allegation of time the indictment is sufficiently certain. It alleges that "on or about the twenty-sixth day of October, A. D. 1897, and before the finding and filing of this indictment," defendant committed the offense. This allegation is sufficient. (*State v. Thompson,* 10 Mont. 549, 27 Pac. 349, and cases there cited; Rev. Stats., sec. 7682; *State v. Williams,* 13 Wash. 335, 43 Pac. 15; *Rema v. State,* 52 Neb. 375, 72 N. W. 474, and cases there cited; *State v. Hoover,* 31 Ark. 676.) The indictment in other respects is sufficient. (2 Bishop's Criminal Practice, 1st ed., sec. 945; *People v. Nelson,* 56 Cal. 77; *People v. Shuler,* 28 Cal. 490.) On the question of the cross-examination of witnesses and whether prejudicial error was committed, authorities are of comparatively little value, owing to the varying circumstances of different cases. The general rule is that the opportunity of cross-examining the opposing party's witness is of course a matter of right, but the latitude allowable is very largely within the discretion of the trial court, and an appellate court will not interfere unless the discretion is oppressively abused. (8 Ency. of Pl. & Pr. 109.) The first instruction standing alone, we contend, states the rule of law correctly, and the second instruction was too favorable to defendant. It is sustained by the following authorities: *Holley v. State,* 105 Ala. 100, 17 South. 102; *State v. Beasley,* 84 Iowa, 83, 50 N. W. 570; *Carrity v. People,* 107 Ill. 162; *State v. Hamilton,* 57 Iowa, 596, 11 N. W. 5; *State v. Northrup,* 48 Iowa, 587; *Pellum v. State,* 89 Ala. 28, 8 South. 83; Sackett's Instructions to Juries, 648.

HUSTON, C. J.—Defendant was convicted of the crime of robbery, from which judgment of conviction, and from the order denying his motion for a new trial, defendant appeals. Defendant makes eighteen assignments of error, as grounds for a reversal of the judgment. The first assignment of error is to the sufficiency of the indictment. Defendant demurred to the indictment upon the grounds: "1. That it does not substantially conform to the requirements of sections 7677-7679 of the Revised Statutes of Idaho; 2. That the facts stated in said indictment do not constitute a public offense.' These ob-

jections are elaborated at some length in the brief of counsel, but we are unable to agree with his contention. We think the demurrer was properly overruled. The second assignment of error is to the action of the trial court in sustaining the objection of the district attorney to certain questions propounded by counsel for the defense to the prosecuting witness Fred Gagnon. The prosecuting witness, the person upon whom the robbery was alleged to have been committed, had testified, in substance, "that he arrived in Wallace on the evening of October 25, 1897, at about half-past 9 o'clock; that he met one Foust in front of Daxon's saloon, on the sidewalk, about 10 o'clock; that, on the morning of the twenty-sixth day of October, A. D. 1897, he lost some money; that he lost it because the defendant, George G. Webb, and Theodore Foust took it away from him." Witness then describes the money he alleges was taken from him, being fifty-five dollars in all. Witness then proceeds to describe the manner in which said money was taken from him, as follows: He (witness) was on the bridge. Theodore Foust came up after him, and told him to take a walk uptown. That witness said no, and said to Foust that he was waiting for a train, and that he did not want to go uptown then. That Foust said, "Hell! Come on; let's take a walk." That he then walked out with him. That he walked out of the Klondike saloon, and then Foust said he was sick. That they went onto the bridge together, and Foust was leaning over the railing either vomiting or pretending to do so, and witness was standing by his side, with both hands in his pockets. That "he was caught under the neck, and thrown on his back, by the defendant." "That he saw defendant's face, and recognized him." That he called Foust to help him, but there was no answer. That Foust then held him down, and that defendant and Foust took the money from him while he was so held. That, after taking his money, defendant and Foust ran away. It seems, from the time witness Gagnon first met Foust, in front of Daxon's saloon, the witness, Foust, and several other parties were drinking together, at various saloons in the town. Upon the preliminary examination of defendant, Gagnon had testified as follows: "I got here on the stage from

Murray. I went inside the saloon. I took a drink, and walked out. As soon as I got outside, I saw Theodore Foust, and shook hands with him. I told him to come inside the saloon, and take a drink. I told him to wait a minute for me. I went outside, and went to another saloon. I changed ten dollars, and gave him five dollars. We then stayed around together until I was robbed." The defense sought to show by the prosecuting witness where he was, and with whom, from 10 o'clock P. M. until 5 o'clock A. M., the time when he alleges he was robbed, and this the trial court refused to let him do. This was error. The defendant was entitled to rigid and thorough examination of this witness, "as to any facts stated in his direct examination or connected therewith, and in so doing may put leading questions." (Rev. Stats., sec. 6079, amended by Laws of 1889.) This witness was the party making the charge against the defendant. It would be a perversion of the rules of evidence, a denial of justice, to say that the defendant, in a case like this, must be confined, in his cross-examination of this witness, to his recital of what took place immediately at the time of the robbery, in face of the fact that it was already shown that the parties had been on friendly terms and drinking together throughout the night. No such rule is contemplated by or expressed in the statutes. The defendant was entitled to go into a searching examination of the witness Gagnon as to his whereabouts, his doings, and the company he was in, from the time he met defendant and Foust to the time of the robbery. To refuse it was a prejudicial error. The trial court permitted counsel for defendant to read all of the testimony cited above as having been given by the witness Gagnon on the preliminary examination, except the words, "We then stayed around together until I was robbed." Upon what principle of law this ruling is based we are unable to comprehend. It was error. What we have said covers the assignment of errors up to and including the seventh assignment. The eighth and ninth assignments of error are not well taken. There was no error in the instructions therein challenged. The tenth assignment is to the giving of the fifth instruction requested by the state, and in this instruction we find no error,

except in the closing paragraph, where the court says: "The defendant has been examined as a witness upon his own behalf. This it is his right to be, and the jury will consider his testimony as they will that of any other witness examined before them. It is proper, however, for the jury to bear in mind the situation of the defendant, the manner in which he may be affected by your verdict, and the very grave interest he must feel in it; and it is proper for the jury to consider whether this position in interest may not affect his credibility or color his testimony." When a defendant goes upon the witness-stand in a criminal action, he occupies the same position as any other witness. He is subject to the same rules, and is entitled to the same immunities and protection, as any other witness. To send a defendant to the jury handicapped by such an instruction as this, especially the latter portion of it, is a vivid illustration of "keeping the word of promise to the ear, and breaking it to the hopes." We think the giving of the last paragraph of this instruction was error. (Thompson on Trials, sec. 2421, and cases cited in notes; *Buckley v. State,* 62 Miss. 705.) It is incumbent upon the state to establish the guilt of the defendant in a criminal action to the satisfaction of the jury, by competent evidence, beyond a reasonable doubt. If the defendant relies upon an *alibi* for his defense, the burden of establishing such *alibi* is upon him. If he succeeds, by competent evidence, in raising a reasonable doubt in the minds of the jury as to the fact of his presence at the place and at the time the offense was committed, he is entitled to an acquittal. As to the amount or character of the evidence necessary to create such a doubt, we think it is a matter upon which the jury are alone to pass. If the evidence offered by the defendant in support of his claim or defense of *alibi* is sufficient to raise a reasonable doubt in the minds of the jury, then the state has not satisfied the jury of the guilt of the defendant beyond a reasonable doubt, and he is entitled to an acquittal. The jury could hardly say they were satisfied of the guilt of the defendant beyond a reasonable doubt, while they entertain a doubt as to his presence at the time and place where the offense was committed, and when without such presence it would

be impossible for him to commit the offense. The instructions of the court upon this subject were conflicting, and therefore erroneous. The sixth instruction asked by the state was, we think, erroneous, while the thirteenth instruction correctly states the law. (*State v. Shafer*, 22 Mont. 17, 55 Pac. 526; *State v. Rolla*, 21 Mont. 582, 55 Pac. 523.) We find no error in the refusal of the court to give the instructions asked by defendant. While it is true that the fourteenth instruction asked by the defendant correctly states the law, the court had already given it in the thirteenth instruction asked by the defendant, and its repetition could avail nothing. For the reasons herein given, the judgment of the district court is reversed, and the cause remanded for a new trial.

Quarles, J., concurs.

Sullivan, J., did not sit in the case, on account of sickness.