STATE of Iowa, Appellee,

v.

Jerry Elno HORSTMAN, Appellant.

No. 56374.

Supreme Court of Iowa.

Oct. 16, 1974.

James U. Mellick, Waukon, for appellant.

Richard C. Turner, Atty. Gen., David M. Dryer, Asst. Atty. Gen., and John Shafer, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ.

REYNOLDSON, Justice.

Defendant was charged with breaking and entering in violation of § 708.8, The Code. A jury convicted him on December

15, 1967, and he was sentenced to prison for a term not to exceed ten years. We have granted permission to take this delayed appeal. Jerry Elmo [sic] Horstman v. State, 210 N.W.2d 427 (Iowa 1973). We reverse.

Except in a few crucial particulars the trial testimony was largely uncontroverted. August 26, 1967, four men (Malcolm Grossheim, Monroe Boley, LaVern Haupt and defendant, Jerry Horstman) left Prairie du Chien, Wisconsin, in Grossheim's car. All four had consumed a substantial quantity of alcohol during the day and early evening. They drove to an area of summer cabins and trailers in Allamakee County, Iowa, where the approach of their car caused Roy Welzel to awaken in his cabin. Watching, he observed three men, unidentifiable in the darkness, invade an adjoining trailer and later return to the car carrying bundles. While these persons were in the neighboring trailer Welzel beamed his own flashlight on the car, and made note of the license number.

The next day the trailer was found ransacked. The license number recorded by Welzel led officers to Grossheim's home in Prairie du Chien where he was arrested. Several items later identified as stolen from the trailer were recovered from Grossheim's house. Grossheim implicated defendant, Monroe Boley and later LaVern Haupt in the theft. Defendant and Boley were immediately questioned, but released, according to the Wisconsin sheriff, on their promise to stay in town for questioning by the Allamakee sheriff the next day. They did not have possession of any stolen property. Defendant was later arrested in Texas, and waived extradition to Iowa.

At trial Gerald Stram, a neighbor of Grossheim, testified he observed Grossheim, the defendant and another man get out of Grossheim's car at about 6:30 on the morning after the theft. He saw Grossheim carry a number of items into the house while defendant walked around drinking a beer. He then observed the three drive away without defendant having entered the house.

Mark Gibson testified he was asleep in Grossheim's home when the four men arrived that morning. He stated defendant carried a pair of binoculars into Grossheim's house.

LaVern Haupt testified he was in the car but slept during the entire episode.

Monroe Boley stated defendant slept through the episode and Haupt participated in the crime.

Grossheim testified he, Boley and defendant committed the crime and defendant carried stolen binoculars into his house.

Defendant testified he slept through the theft and did not enter Grossheim's house in the morning.

Defendant assigns five errors on appeal. The first is dispositive.

I. Defendant asserts trial court erred by instructing the jury in a manner which singled out defendant's testimony for particular consideration. Defendant appropriately objected the instruction " * * * merely emphasizes argumentatively whether or not the testimony is true or untrue, and it unduly emphasizes the possibility that the defendant may not be telling the truth."

The instruction given was subsequently held improper by this court in State v. Bester, 167 N.W.2d 705, 710 (Iowa 1969). Before deciding if *Bester* is applicable we must determine if defendant has preserved the alleged error for review.

The following colloquy occurred at trial:

"The Court: Let the record show that the *preliminary draft* of the instructions was given to counsel before argument, and now at the close of the argument a draft of the *proposed final instructions* was given to counsel, and if they have had opportunity to examine them, we can proceed to make a record of any exceptions they have. I presume you will have to lead, Mr. Shafer. Mr. Shafer: The State makes no objections to the proposed

final draft of the instructions as submitted to counsel." (Emphasis supplied.)

Defendant then entered his exceptions to the "proposed final instructions." The court made one change (not relevant here) and asked if there was "anything further." Defense counsel responded "I guess I don't have any record" and the instructions were read to the jury. Defendant did not claim instructional error in his motion for a new trial as allowed by § 787.3(5), The Code.

The State asserts defendant did not comply with Rule of Civil Procedure 196 (made applicable to criminal trials by § 780.35, The Code) by excepting to the "final instructions" and thereby waived any error. See State v. Baskin, 220 N.W.2d 882 (Iowa 1974).

■ Rule 196, as it existed at time of trial, required two distinct sets of instructions. A "preliminary draft of instructions" was to be furnished to counsel prior to arguments to the jury and no record was to be made thereon. From the colloquy set out above it is apparent the rule was followed as to the "preliminary draft of instructions." It is equally apparent trial court followed rule 196 "final" instruction procedures in submitting the "proposed final" instructions to counsel. They were submitted and counsel given a last opportunity to make exceptions and objections in exact accordance with "final" instruction provisions of the rule. We find no significance in use of the word "proposed" other than mere recognition of the court's power to alter final instructions before reading them to the jury.

■ Having determined this issue is preserved, we must now decide if our holding in Bester, filed one and one half years after this defendant was sentenced, is applicable here. Bester is to be applied prospectively and to all "cases on direct review when Bester was filed." State v. Thrasher, 175 N.W.2d 397, 402 (Iowa 1970); see State v. Nepple, 211 N.W.2d 330, 332–333 (Iowa 1973); State v. Holmes, 176 N.W.2d 147, 148–149 (Iowa 1970). The issue is whether this case, a delayed appeal, was on "direct review" when Bester was filed. We hold it was.

We find support for this decision in State v. Ford, 259 Iowa 744, 145 N.W.2d 638 (1966), a delayed appeal in which defendant challenged an instruction similar to that now under consideration. Ford contended Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), decided subsequent to Ford's trial, was controlling. Griffin, like Bester, had been held applicable prospectively and to cases pending on direct review at the time it was filed. See Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). Both the majority and dissent in Ford, while differing on the substantive applicability of Griffin, implicitly accepted its applicability under the direct review rule.

■ Support for this rationale also lies in the nature of delayed appeal. This extraordinary process was designed to afford appellate review of cases otherwise barred by failure to properly effectuate an appeal where it could be demonstrated such failure was at least in part caused by circumstances beyond defendant's control. See Ford v. State, 258 Iowa 137, 138 N.W.2d 116 (1965); State v. Wetzel, 192 N.W.2d 762 (Iowa 1971); Horstman v. State, 210 N.W.2d 427 (Iowa 1973). Had defendant perfected his appeal, and had his appeal been decided after Bester, he would have been granted the relief sought. But we have held his failure to perfect his appeal excusable and will now neither speculate as to when we would have decided this case under normal procedures nor penalize defendant for excusable neglect.

■ Because we hold Bester applicable this case must be reversed and remanded for new trial.

II. The result reached in Division I obviates the necessity of considering defendant's fifth assignment which sought a new trial on other grounds. Defendant's other assignments concern issues which may again surface on retrial.

III. Defendant asserts there was no evidentiary foundation justifying an instruction which permitted the jury to consider evidence, if any, of his "flight" from Prairie du Chien. He timely objected to the "flight" instruction at the time trial court's "proposed final" instructions were submitted to counsel. The giving of an instruction for which there is no factual basis is generally prejudicial. State v. Mays, 204 N.W.2d 862, 865 (Iowa 1973).

The record shows defendant left Prairie du Chien for Cobb, Wisconsin, one day after the crime and the same day he was questioned by the Wisconsin sheriff. The latter testified he told defendant the Allamakee sheriff wanted to talk to him the next day. He asked defendant if he would stay in town and defendant said he would. Defendant denied this. Defendant testified his luggage was in Cobb but no other evidence was introduced to show he had made prior plans to leave that day. Defendant stated he left to take a job, not knowing he was under suspicion, but returned to Prairie du Chien briefly thereafter and appeared in public. The Wisconsin sheriff testified he was never able to find defendant following the initial questioning.

An assignment similar to defendant's was considered in State v. Bige, 195 Iowa 1342, 1347–1348, 193 N.W. 17, 20 (1923):

"It is thought by appellant that the court was not warranted in giving an instruction on flight because there was no foundation in the evidence, for that it was not shown that defendant knew he was accused or suspected, and that he fled to avoid arrest. We have held that evidence is properly admissible, and that it is proper to instruct on this question, even though the accused had not been charged with the commission of the offense. It was for the jury to say, under all the circumstances, whether he departed because of his consciousness of guilt."

The above statement of law was quoted with approval and applied in State v. Galvan, 181 N.W.2d 147, 151 (Iowa 1970); State v. Thrasher, 175 N.W.2d 397, 403 (Iowa 1970); State v. Wimbush, 260 Iowa 1262, 1267–1268, 150 N.W.2d 653, 656 (1967).

The evidence detailed above created a question as to defendant's reason for leaving town the day after the crime was committed. That question was properly submitted to the jury.

IV. Trial court instructed the jury defendant had the burden of proving he could not form the requisite intent to commit the crime because he was voluntarily intoxicated. Defendant asserts the State should have had the burden on this issue. While conceding he failed to properly object to this instruction at trial, defendant seeks review on the basis of the rule announced in State v. Wisniewski, 171 N.W.2d 882 (Iowa 1969). In *Wisniewski* we recognized the general rule that errors not raised in the trial court may not ordinarily be the basis for reversal on appeal. However, we relaxed that rule when defendant asserted a "new right" on appeal—one which arose after trial and which, if urged at trial, would have been apparent error to sustain.

Defendant claims such a "new right" arose from State v. Buchanan, 207 N.W.2d 784 (Iowa 1973) wherein four members of this court (by concurrence and dissent) concluded defendant may not properly be burdened with proving he lacked specific criminal intent by reason of voluntary intoxication. However, this alleged error was not preserved in *Buchanan* and the concurring and dissenting opinions represent a position not yet affirmatively adopted in this state. See, however, State v. Thomas, 219 N.W.2d 3, 3–5 (Iowa 1974). But to hold *Buchanan* created a "new right" which may be asserted for the first time on appeal would require us to extend *Wisniewski* to include not only rights arising after trial but also rights which may arise in the future. This we decline to do.

V. Defendant's final assignment contests the adequacy of evidence corroborative of his accomplices' testimony. See § 782.5, The Code. This issue was pre-

served for appeal by motion for a directed verdict.

■ Trial court must originally determine if there is corroborative evidence adequate to meet the requirements of § 782.5, The Code. Our applicable rules developed in the interpretation of that statute are summarized in State v. Nepple, 211 N.W.2d 330, 331–332 (Iowa 1973). See also State v. Thompson, 220 N.W.2d 901 (Iowa 1974); State v. Bizzett, 212 N.W.2d 466, 468 (Iowa 1973).

■ With these principles in mind we have carefully examined the entire record and have found ample corroboration of the accomplices' testimony. Defendant and other witnesses placed defendant in the company of the perpetrators of the crime shortly before and after it was committed. The defense offered at trial placed defendant at the scene of the crime. Accomplice Grossheim testified a pair of binoculars was stolen from the trailer and carried by defendant into Grossheim's home. Mark Gibson, a nonaccomplice, stated he saw defendant carry binoculars into Grossheim's house. None of these examples of corroboration are singularly persuasive but in totality they are adequate to meet the requirements of § 782.5, The Code. Trial court properly denied the motion for directed verdict.

Reversed.